Argued and submitted February 27, reversed and remanded June 27, 1984

## STATE OF OREGON,
*Appellant,*

*v.*

## CARLA WISEMAN,
*Respondent.*

(DA241289; CA A29200)

683 P2d 153

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Diana I. Stuart, Metropolitan Public Defender, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The state appeals from a pretrial order allowing defendant's motion to suppress evidence. ORS 138.060(3). The issue is whether the arresting officer had probable cause to arrest. We conclude that he did and reverse and remand for trial.

Defendant was charged with loitering to solicit prostitution. Portland City Code § 14.24.050.[1] At about 6 p.m., Officer Morse, working undercover, observed defendant on the corner of N.E. Union Avenue and Morris Street in Portland, which was known to the police as a high vice area. Between 6:15 p.m. and 6:23 p.m., Morse observed her wave and beckon to the lone male drivers of four passing vehicles. Two of these drivers circled the block, returned to defendant and stopped. She approached each vehicle and spoke with its driver, who then drove away. At 6:27 p.m., Morse drove past defendant. She waved and beckoned to him. He circled the block. As he returned to where defendant was standing, a woman got out of an automobile directly in front of him and, after looking back at Morse, appeared to recognize him. She then walked over to defendant and spoke with her while pointing at Morse. Defendant then started walking away. Morse drove alongside her and asked, "Are you dating?" She replied, "Yes, but not with you." When he asked, "Why?" she answered, "Because you are a cop." Morse then arrested her for loitering to solicit prostitution.

At the suppression hearing, Morse testified that he had been working in the area as a vice officer for 18 months, that it was a "high vice area" and that, on the basis of his training and experience he knows that "dating" is a street term used by prostitutes and their customers to mean

---

[1] Portland City Code § 14.24.050 provides, in relevant part:

"(b) It is unlawful for a person to loiter in or near any street or public place in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in determining whether such purpose is manifested are that the person repeatedly beckons to, stops or attempts to stop motor vehicle operators by hailing them or gesturing to them. No arrests shall be made for a violation of this subsection unless the arresting officer first affords the suspected person an opportunity to explain his or her conduct, and no one shall be convicted of violating this section if it appears at the trial that the explanation given was true and disclosed a lawful purpose."

"* * * a possible agreement, or an actual agreement, for an act of prostitution. In other words, if I say 'Are you dating?' it would be a signal to someone who was looking for an act of prostitution that I was interested; and they would respond in kind, if they were."

The trial court concluded that Morse did not have probable cause to arrest defendant and suppressed evidence obtained from her after her arrest. Probable cause to arrest exists when "there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11).

At the time Morse arrested defendant, he knew: she was standing on a corner in a high vice area; she had waved and beckoned to four separate lone male motorists; two of the motorists circled the block and returned to talk with her; she had waved and beckoned to him; when he circled the block and returned to her, she walked away from his car when another woman talked to her and pointed at him; she acknowledged that she was "dating," a street term that Morse understood from his experience and training to mean that she was soliciting for prostitution; and she indicated that she would not "date" him because he was a police officer. Under the totality of the circumstances, we conclude that Morse had a substantial objective basis for believing that, more likely than not, defendant had violated the ordinance.

Defendant relies on *City of Portland v. Miller,* 62 Or App 145, 659 P2d 980 (1983). Her counsel candidly concedes that the issue of reasonable suspicion to stop and probable cause to arrest were not raised in *Miller,* which specifically addressed only the issue of whether there was proof of Miller's guilt beyond a reasonable doubt. Whether the evidence in *Miller* satisfied any standard short of proof beyond a reasonable doubt was not before us in the case.

The evidence here clearly shows that Morse had probable cause to arrest defendant. *See, e.g., State v. Hlady,* 43 Or App 921, 924 n 3, 607 P2d 733 (1979). Therefore, the trial court erred in allowing defendant's motion.

Reversed and remanded for trial.