Larry Donnell McWILLIAMS, a/k/a Donell McWilliams, Appellant,

v.

UNITED STATES, Appellee.

No. 6303.

District of Columbia Court of Appeals.

Argued Aug. 9, 1972.

Decided Dec. 12, 1972.

Martin J. Callaghan, Alexandria, Va., appointed by this court, for appellant.

Joseph F. McSorley, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Frederick C. Moss and Richard S. Vermeire, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and KELLY and PAIR, Associate Judges.

KELLY, Associate Judge:

Appellant was convicted of possession of the implements of a crime (narcotics paraphernalia) in violation of D.C.Code 1967, § 22–3601 and possession of heroin in violation of D.C.Code 1967, § 33–402. He now contends that the trial court erred in denying his motion to suppress evidence.

Officer Daniels of the Metropolitan Police testified at the hearing on appellant's motion to suppress that on the morning of

November 11, 1971, he entered Bonanza Cleaners, a dry cleaning establishment at 4309 Deane Avenue, N.E. for the purpose of using the rest room. Upon entering the men's room, located at the rear of the premises, he observed appellant, whom he had seen on other occasions and recognized as an employee, standing in front of the sink. Appellant looked at the officer in a startled manner, stepped back from the sink, and "froze". The officer then noticed a small black coin purse on the left side of the sink.[1] He stepped toward the sink and again appellant stepped back. Officer Daniels picked up the purse and opened it. Upon observing several small packets containing a white powdery substance, he asked appellant: "What you got here?" Appellant replied: "You know."[2] The officer then identified himself and formally placed appellant under arrest. A subsequent search of appellant's person disclosed a needle, syringe and cooker wrapped in foil in his left pants pocket.

The officer testified that he looked into the purse only because he was "curious".[3] He also testified that the Metropolitan Police Department has a narcotics display with a sample purse of that type and that on about ten other occasions he himself had seen similar purses used by addicts to carry their paraphernalia.

The motion to suppress was denied without opinion after the hearing, and again at trial.[4] Appellant now claims this was error since the officer lacked probable cause to arrest when the search occurred. We agree, and reverse.

It is well established that "[e]ven though a suspect has not formally been placed under arrest, a search of his person can be justified as incident to an arrest if an arrest is made immediately after the search, and if, *at the time of the search*, there was probable cause to arrest."[5] It is also the rule that:

[P]robable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of arrest. The question to be answered is whether such an officer in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested. . . . Jackson v. United States, 112 U.S.App.D.C. 260, 262, 302 F.2d 194, 196 (1962).

The factors cited by the Government as constituting probable cause are (1) appellant's quick looks at the officer, (2) his freezing against the wall, (3) his startled expression, and (4) the sight of a coin purse similar to those in which the officer had found narcotics in the past. While it is true, as the court said in Davis v. United States, 133 U.S.App.D.C. 172, 174, 409 F.2d 458, 460, cert. denied, 395 U.S. 949, 89 S.Ct. 2031, 23 L.Ed.2d 469 (1969), that "[c]onduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer", we think that, under all the cir-

---

1. The officer testified at the hearing on the motion that he saw a small, unidentified object in appellant's hand when he initially entered the rest room and at some point not made clear in the transcript he noticed tinfoil protruding from appellant's pocket.

2. Tr. at 8–9.

3. He said at trial that at the moment he picked up the purse appellant was not under arrest and he had no reason to believe that a crime had been committed.

4. The trial judge refused to reconsider the motion in the absence of new evidence. *See* Jenkins v. United States, D.C.App., 284 A.2d 460 (1971).

5. United States v. Brown, D.C.Cir., 463 F.2d 949, 950 (1972) ; Peterkin v. United States, D.C.App., 281 A.2d 567 (1971), *cert. denied*, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972).

cumstances, probable cause was lacking. The sight of an employee standing beside a sink in his employer's rest room, who appears startled upon seeing a policeman, is not adequate justification for an arrest or a search. Additionally, Officer Daniels, by his own admission, did not have reason to believe a crime was being committed when he looked into appellant's purse and opened it only out of curiosity. We therefore conclude there was no probable cause to arrest prior to the search and, as a consequence, the search constituted a violation of appellant's rights under the Fourth Amendment.[6]

Reversed.

6. We must note that despite some similarities the instant case is factually distinguishable from our recent opinion in United States v. Smith, D.C.App., 293 A.2d 856 (1972). In *Smith* the arresting officer already had reason to believe that some illegal activity was taking place at the outset of the encounter. Moreover, the property he searched was abandoned by its owners prior to his inspection of it.