Argued August 23, affirmed October 22, petition for rehearing
denied November 29, 1973, petition for review denied
January 29, 1974

STATE OF OREGON, *Respondent, v.*
LESLIE HUNT (No. 29109), *Appellant.*

514 P2d 1363

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before LANGTRY, Presiding Judge, and FOLEY and FORT, Judges.

FOLEY, J.

Defendant was indicted for the crime of criminal activity in drugs in violation of ORS 167.207, was found guilty by jury verdict and fined $75. Her appeal contains two assignments of error.

■ The first assignment of error is that the trial court erred in denying defendant's motion to suppress. The facts pertinent to this assignment are quite simple. Defendant was the passenger in the front seat of an automobile which was stopped at a crosswalk to allow pedestrian traffic to pass. While the automobile was so stopped, a vehicle driven by one Officer Hailey pulled up parallel to the automobile in which defendant was riding. Officer Hailey's vehicle was on the right side of the automobile in which defendant was riding so that, according to Officer Hailey's testimony, he was about three or four feet from defendant.

Officer Hailey testified that, because of the difference in height between his vehicle (which was unmarked) and that in which defendant was riding, he

was able to see into the other automobile. Officer Hailey further testified that he observed defendant to be holding a hand-rolled cigarette in her left hand, together with a book of matches. Officer Hailey said that he immediately recognized this as a marihuana cigarette. At that point, according to Officer Hailey, defendant noticed that he was watching her (Officer Hailey was in uniform), appeared to him to be surprised, and let the cigarette and matches drop to the floor of the automobile. Officer Hailey then got out of his own vehicle, opened the door of the automobile in which defendant was riding, and seized the hand-rolled cigarette. Subsequent laboratory tests confirmed that the cigarette contained marihuana.

After Officer Hailey picked up the cigarette, he examined it, and saw that the contents "had the color of * * * marijuana." Officer Hailey then placed the cigarette in his pocket, and he and the driver of the car in which defendant was riding parked their cars. Officer Hailey asked defendant and the driver, Richard Krohn, to get out, and he "advised them of their rights." Officer Hailey told Krohn that he was going to search Krohn's car, but Krohn suggested that he search somewhere other than the street where they were parked. Therefore, Officer Hailey rode with defendant to the police station where he searched the car. During the search Officer Hailey found several "items which appeared to be roaches" in the ashtray, as well as marihuana seeds in other places in the car.

Officer Hailey testified at the hearing on the motion to suppress about the "specialized training in the area of narcotics law enforcement" which he had before the event in question. Included in this experience was narcotics training from the Oregon State Police Academy; a "college course in narcotics and

dangerous drugs"; and "specific training in identification of narcotics and narcotics paraphernalia." In addition, Officer Hailey testified that he had made "four to five" arrests for possession of marihuana cigarettes similar to the one which defendant had.

Defendant contends that the twin factors of (a) the observation of a hand-rolled cigarette in defendant's hand and (b) defendant's dropping of the cigarette when she noticed that she was being observed by a uniformed policeman did not give Officer Hailey probable cause to seize the cigarette. We reject this contention. We recognize that there is substantial authority that furtive gestures, standing alone, do not rise to the level of probable cause to justify a search or a seizure.[1] And we also recognize that the probability that a hand-rolled cigarette contains marihuana, as opposed to ordinary tobacco, is something less than a certainty,[2] so that there is some question as to whether the officer would have been justified in making the seizure had it not been for the gesture of dropping the

---

[1] *See*, e.g., McWilliams v. United States, 298 A2d 38, 12 Crim L Rptr 2303 (DC App 1972); United States v. Page, 298 A2d 233 (DC App 1972); and United States v. Humphrey, 409 F2d 1055 (10th Cir 1969). Extensive discussions of the cases and trends in this area of search and seizure law are found in People v. Superior Court, 3 Cal 3d 807, 91 Cal Rptr 729, 478 P2d 449, 45 ALR3d 559 (1970), and People v. Nelson Pitts, 40 Mich App 567, 199 NW2d 271 (1972).

[2] For example, in State v. Buchwald, 293 Minn 74, 196 NW2d 445 (1972), a seizure of marihuana cigarettes was upheld where, in addition to observation of the cigarettes, the officers had prior information that marihuana was being used on the premises. However, in a number of California cases, including People v. Terry, 70 Cal 2d 410, 77 Cal Rptr 460, 454 P2d 36 (1969), *cert denied* 399 US 911 (1970); People v. Anderson, 266 Cal App 2d 125, 71 Cal Rptr 827 (1968); and People v. Sullivan, 242 Cal App 2d 767, 51 Cal Rptr 778 (1966), the courts have held that observation of hand-rolled cigarettes in various parts of automobiles justified seizure.

cigarette. However, in this case, the officer was confronted with the combination of a highly suspicious object and a gesture which could reasonably be interpreted as an attempt to remove the object from his view. We believe that these factors constituted sufficiently strong circumstances so as to justify a seizure under the standards of *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969); *State v. Sagner,* 12 Or App 459, 506 P2d 510, Sup Ct *review denied* (1973); *State v. Temple,* 7 Or App 91, 488 P2d 1380, Sup Ct *review denied* (1971), *cert denied* 406 US 973 (1972); and *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970).[3] It follows that defendant's motion to suppress was properly denied.

■■ Defendant's second assignment of error is that the trial court erred in denying defendant's motion for a mistrial. The facts pertinent to this assignment of error are as follows: At defendant's trial Officer Hailey was testifying as to the events immediately after he seized the marihuana cigarette from the floor of the car. He testified that he advised defendant and Krohn of their *Miranda*[4] rights and that defendant said that she understood her rights. The prosecutor then asked Officer Hailey whether defendant had said anything. Officer Hailey replied that she had not, and was about to offer his opinion as to why she had remained silent when defense counsel objected. After that objection, the prosecutor again asked whether defendant had made any statement. At that point defense

---

[3] Somewhat analogous factual situations are discussed in State v. Williams, 253 Or 613, 456 P2d 497 (1969); State v. Jacobs, 11 Or App 218, 501 P2d 353, Sup Ct *review denied* (1972); State v. Cortez, 10 Or App 122, 497 P2d 1228, Sup Ct *review denied* (1972); and State v. Jones, 9 Or App 629, 498 P2d 390 (1972).

[4] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

counsel moved for a mistrial on the basis that defendant's decision to remain silent could not be used against her. The motion was denied, and the court gave no curative instruction to the jury.

Later in his direct examination of Officer Hailey, the prosecuting attorney asked questions pertaining to a subsequent stationhouse search of defendant's purse. The prosecutor asked whether defendant made any statements during the stationhouse search. Defense counsel objected, again on the basis that defendant's refusal to make a statement could not be used against her, and the court responded: "Yes, I'm sure the jury understands that, overruled."

It is the state's position that these questions by the prosecutor were designed to lay a foundation for testimony regarding a statement volunteered by defendant as her purse was being searched at the stationhouse. As to the latter series of questions (relating to the stationhouse), we believe that the record supports the state's position. However, as to the former line of questioning regarding defendant's failure to make a statement to Officer Hailey in the street, it is at least equally likely that this was an attempt to put before the jury the fact that defendant exercised her constitutional right not to incriminate herself. Such tactics are impermissible. *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966); *Griffin v. California,* 380 US 609, 85 S Ct 1229, 14 L Ed 2d 106 (1965).

The state contends that any prejudice which might have resulted from these questions and answers was rendered harmless by defense counsel's objection during the second line of questioning that "[t]he fact of whether or not she didn't make a statement cannot

be held against her," and the court's response, in the jury's presence, "[y]es, I'm sure the jury understands that * * *." But, as stated above, the second line of questioning was at least arguably permissible. The first set of questions as to defendant's silence on the street was clearly improper, and the trial court gave no indication to the jury that it was improper, despite the fact that the prosecutor persisted in asking the question even after the impropriety had been called to his attention by defense counsel. Had the trial court clearly stated to the jury that it must not draw any inferences from defendant's silence, perhaps the error would have been cured. Here, however, the court said in response to the motion only: "All right, that is overruled. Denied." Such a response by the court, if it had any effect, would have had the effect of indicating to the jury that defendant's motion for mistrial was groundless. Given this factual context, we do not believe that the later observations of the court and defense counsel concerning a different line of questioning were sufficient to undo the potential harm that had previously been done. *Cf. State v. Poole,* 11 Or App 55, 500 P2d 726, Sup Ct *review denied* (1972); *State v. James Edward Smith,* 4 Or App 261, 478 P2d 417 (1970).

Thus, we conclude that the court erred in not giving corrective instructions or, in the alternative, granting defendant's motion for mistrial.

However, a recognition of error does not end the inquiry for our review is governed by Art VII (amended), § 3 of the Oregon Constitution which provides in part:

"* * * If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the

case, such judgment shall be affirmed, notwithstanding any error committed during the trial * * * "

See *State v. Zadina*, 1 Or App 11, 457 P2d 670 (1969).

In *State v. Van Hooser*, 266 Or 19, 511 P2d 359 (1973), the Oregon Supreme Court interpreted this provision to mean that the appellate court must affirm if (1) there is substantial and convincing evidence of guilt and (2) the error committed was very unlikely to have changed the result of the trial. As to the former issue, the evidence is uncontradicted that the cigarette which Officer Hailey seized contained marihuana, and any possible argument that the state did not prove defendant's knowledge that she possessed marihuana was vitiated by the following exchange during the cross-examination of defendant:

"Q Okay. Now, with regard to that cigarette item, did you know what was contained in the cigarette at the time you had it in your hand?
"A I knew what I thought it was.
"Q Okay. And what did you think it was?
"A I thought it was marijuana."

Thus, we have no difficulty in concluding that the evidence of guilt was overwhelming.

As to the latter issue, viz., whether the error was very unlikely to have changed the result of the trial, we conclude that there was no longer any issue of guilt once defendant admitted knowing that the substance she possessed was marihuana. The line of questioning which we disapproved above was directed toward creating an inference of guilty knowledge; once defendant relieved the state of proving that element by freely admitting it, any potential prejudice disappeared.

Affirmed.